IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

YORIE VON KAHL,
LEONARD PELTIER,

                              Petitioners,


              v.                        CASE NO. 04-3418-RDR

UNITED STATES,
et al.,                       Respondents.


MEMORANDUM AND ORDER

This petition for writ of habeas corpus, 28 U.S.C. 2241, was
originally filed in the United States District Court for the
District of Columbia by two inmates while they were incarcerated at
the United States Penitentiary, Leavenworth, Kansas (USPL).
Petitioners paid the filing fee, and counsel entered appearances.
The federal court in the District of Columbia found it lacked
jurisdiction and transferred the action to this court.[1]  Having
examined all materials filed, the court makes the following findings
and Order.

---

[1]     This case was filed in the DC court on August 14, 2002.  That court directed service
of an order to show cause upon respondents in December, 2003.  On respondents' motion, the action
was transferred to this court in November, 2004, over petitioners' objections.
        In September, 2004, a month before this case was transferred, petitioners filed a civil rights
complaint in the United States District Court for the District of Columbia.  The DC court issued an
order in December, 2005, finding the complaint "actually appears to be a petition for writ of habeas
corpus," and transferring it, over petitioners' objections, to this District [Peltier, et al., vs. USPC, et
al., Case No. 05-3484 (D.Kan.)] where the petitioners at the time were incarcerated.  See Preiser v.
Rodriguez, 411 U.S. 475, 479 (1973); Boutwell v. Keating, 399 F.3d 1203, 1209 (10th Cir. 2005).  In
their response to the DC court's order regarding transfer of the civil rights action, petitioners noted
they "have had a petition for a writ of habeas corpus pending for in excess of two years" in the
transferor court.  Both actions are presently pending in this court.

**CLAIMS**

Petitioners claim they are being held in unlawful custody and should have been released at least ten years ago.  In support, they allege and assert the following:

1.  Section 235(b)(3) of Pub.L. 98-473, Title II, 98 Stat 2032, (Oct. 12, 1984)[hereinafter Sec. 235(b)(3)], a provision in the Sentencing Reform Act of 1984 (SRA), granted them "unqualified rights to issuance of (parole) release dates under their respective guidelines" prior to October 12, 1989.

2.  The effective date of this provision was October 12, 1984.

3.  This provision was "applicable to all offenses committed prior to the effective date" and "became a certainty" for petitioners, thus "settling" their expectation of release dates established prior to October 12, 1989.

4.  The United States Parole Commission (USPC) has refused to issue release dates with respect to either petitioner.

5.  Under Sec. 235(b)(3), the USPC was abolished and all parole statutes were repealed within five years of the effective date, i.e., no later than October 12, 1989.

6.  All subsequent acts of the USPC and its employees are in "severe conflict" with petitioners' rights and the intent of Congress, and are void.

7.  Respondents purport to hold petitioners under the amendment to Sec. 235(b)(3) enacted with other amendments to the SRA on December 7, 1987, when these amendments expressly applied only to offenses committed after the date of enactment, and therefore not them.

8.   The retroactive application to them of the December 7, 1987, amendment violates the due process, ex post facto, and bill of attainder clauses of the United States Constitution.

9.  This Court should "seriously consider a general order releasing all prisoners to whom these claims apply."

<u>**BACKGROUND**</u>

In 1984 Congress passed a large, convoluted, and poorly drafted piece of legislation, and has since passed several clarifying or remedial amendments.  The portion of this legislation pertinent to this case was intended to revamp the federal sentencing process as a whole by phasing out the federal parole system and replacing it with new sentencing guidelines.  Federal inmates, like petitioners herein, have repeatedly attempted to turn this poorly written legislation into a windfall entitlement to earlier release on parole, without success.

The part of this legislation creating the first federal sentencing guidelines is referred to as the Sentencing Reform Act (SRA), and established a sentencing commission and guidelines procedures.  It provided that once the new sentencing system was in place, the USPC and parole statutes would be prospectively abolished.  The SRA also contained the original Sec. 235(b)(3), a "housekeeping provision" which delayed the repeal of parole statutes and the demise of the USPC for five years with regard to a specific set of inmates: those who committed offenses prior to the SRA, sometimes referred to as "old law" inmates.  The original Sec.

3

235(b)(3) continued the authority of the USPC to determine release dates for these inmates to which the new sentencing guidelines were expressly made inapplicable.

Congress initially passed the five-year provision apparently assuming most federal inmates who committed their crimes under the old parole system would be entitled to release within that time. Congress reconsidered that abolishing parole at the end of that five-year period would confer unwarranted early release upon numerous "old law" federal inmates who had committed the most serious crimes and received the most severe sentences, and amended Sec. 235(b)(3).  See D'Agostino v. Keohane, 877 F.2d 1167, 1172 FN9 (3rd Cir. 1989).

In Bledsoe v. U.S., 384 F.3d 1232 (10th Cir. 2004), cert. denied, 544 U.S. 962 (2005), the Tenth Circuit included this historical background:

> Before November 1, 1987, The Parole Commission and Reorganization Act of 1976 (PCRA) governed the terms of federal sentences. . . (codified at 18 U.S.C. §§ 4201-4218). . . . Dissatisfied with this system, Congress passed the Sentencing Reform Act of 1984 (SRA).  The SRA became effective on November 1, 1987, when it repealed and replaced the PCRA (citations omitted).  Under the SRA, parole was to be abolished, the Parole Commission was to be phased out, and prisoners were to serve uniform sentences under sentencing guidelines. . . .

Id. at 1233.  As noted, Sec. 235(b)(3) in the original SRA was enacted to deal with already sentenced prisoners who would not be covered by the new guidelines.  The original version of Sec. 235(b)(3) provided, in pertinent part:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction

4

> the day before the expiration of five years after the
> effective date of this Act, that is within the range that
> applies to the prisoner under the applicable parole
> guideline. . . .

SRA of 1984, Pub.L. No. 98-473, 98 Stat. 1987, 2032 (1984).  The

court in <u>Bledsoe</u> specifically discussed the history of Sec.

235(b)(3), which is at the crux of this case:

> In <u>Lewis v. Martin</u>, 880 F.2d 288, 290 (10th Cir.
> 1989), this court characterized Section 235(b)(3) as
>
> > a "winding-up" provision to ensure that the
> > Parole Commission will set release dates for
> > all prisoners sentenced under the old statutes
> > before it goes out of business on November 1,
> > 1992 (cite omitted).  The subsection does not
> > require the Commission to take immediate action
> > on the release date of any prisoner. . . .
>
> <u>Id</u>. at 290 FN2.

<u>Bledsoe</u>, 384 F.3d at 1233.  The <u>Bledsoe</u> court also quoted the <u>Lewis</u>

court's description of the amended version of Sec. 235(b)(3)[2]:

> On December 7, 1987, section 235(b)(3) was amended to
> delete the clause requiring the Commission to set release
> dates within the guideline range (cite omitted).  The
> amended section 235(b)(3) requires the Commission to set
> release dates "pursuant to section 4206 of Title 18 United
> States Code," which permits release dates outside the
> guideline range.

<u>Bledsoe</u>, 384 F.3d at 1233-34, *citing* <u>Lewis</u>, 880 F.2d at 290.  The

court in <u>Bledsoe</u> further explained:

---

[2]     The amendment was enacted as a part of PL 100-182 (S 1822) Dec. 7, 1987, an "Act to amend title 18, United States Code, and other provisions of law relating to sentencing for criminal offenses," cited as the "Sentencing Act of 1987."  With regard to Sec. 235(b)(3), this Act pertinently provided: Section 235(b)(3) of the Comprehensive Crime Control Act of 1984 is amended by striking out "that is within the range that applies to the prisoner under the applicable parole guideline" and inserting in lieu thereof "pursuant to section 4206 of title 18, United States Code."  <u>See</u> 18 U.S.C. 3551 Note, Sec. 2(b)(2).

> On December 7, 1987, thirty-six days after the SRA became
> effective, Congress amended the Act to clarify that the
> terms of the PCRA would continue to govern the sentences
> of those prisoners sentenced prior to the effective date
> of the SRA, and extended the life of the Parole Commission
> to administer those sentences. . . .

Bledsoe, 384 F.3d at 1234.  Additional amendments were made in subsequent legislation such as the "Parole Commission Phase Out Act of 1996," and "The United States Parole Commission Extension and Sentencing Commission Authority Act of 2005."  Pub.L. 109-76, § 2, 119 Stat. 2035 (Sept. 29, 2005).  These amendments mainly extended the life of the USPC[3].  The legislative history of the statutes governing parole, Chapter 311, 18 U.S.C. 4201 to 4218, also reflects the extension of the USPC and the parole statutes.  While these statutes are designated as "repealed", (citing Pub.L. 98-473, Oct. 12, 1984), Notes to the Chapter provide, "Effective Date of Repeal; Chapter to remain in effect for Eighteen years after Nov. 1, 1987."  See 18 USC 4201 to 4218.  Notes to 18 U.S.C.A. 4201, et seq., reiterate "the provisions of this chapter in effect before Nov. 1, 1987, shall remain in effect . . . for (eighteen) years after Nov. 1, 1987, as to an individual who committed an offense . . . before Nov. 1, 1987."  Id., citing Section 235(a)(1) of Pub.L. 98-473. Respondents point out that during the pendency of this case, the

---

[3]        For example, the 2005 Act provides: "For purposes of section 235(b) of the Sentencing Reform Act of 1984 (cite omitted), as amended, as such section relates to chapter 311 of title 18, United States Code, [18 U.S.C.A. § 4201 et seq.] and the United States Parole Commission, each reference in such section to 'eighteen years' or 'eighteen-year period' shall be deemed a reference to '21 years' or '21-year period', respectively."  See 18 U.S.C. 3551, Note.  Earlier amendments had changed the time period in Sec. 235(b)(3) by similarly amending the words in the section from five to ten (1990), ten to fifteen (1996), and fifteen to eighteen (2002) years.

authority of the USPC was again extended by statute, this time to November, 2008 (Doc. 37).

## SUMMARIES OF PETITIONERS' BACKGROUNDS

Only a few facts regarding each petitioner's background are material for purposes of this case.

### I.   PETITIONER VON KAHL

Petitioner Von Kahl was convicted in 1983 in the United States District Court for the District of North Dakota of offenses committed in 1983 including the murder of federal officers, and was sentenced to two  concurrent life terms, a consecutive 10-year term, and a consecutive 5-year term.  He was sentenced pursuant to 18 U.S.C. 4205(b)(2), which provided for release on parole "at such time as the Commission may determine."  He received an initial parole hearing in 1984 and was continued to a 10-year reconsideration after discussion of circumstances of his offenses involving a shootout with law enforcement officers in which two U.S. Marshals were killed and three others wounded.  In 1986, he was given a statutory interim hearing and continued to a 15-year reconsideration hearing.  He received statutory interim hearings in 1988, 1990, 1992, and  1995, with no change.  He waived hearings in 1997, and some subsequent years.  Petitioner's offenses are rated Category Eight, a guideline range without an upper limit.

### II.  PETITIONER PELTIER

Petitioner Peltier was convicted in 1977 in the United States District Court for the District of North Dakota of two counts of first degree murder committed in 1975 and sentenced to two consecutive life terms. He was subsequently convicted in the United States District Court for the District of California for escape and possession of a firearm and sentenced to a consecutive term of 7 years. Petitioner alleges he was not sentenced under 18 U.S.C. 4205(b)(2), and instead was subject to a 10-year minimum requirement for parole eligibility.

He was given an initial parole hearing in 1993, during which the circumstances of his offenses, which included the murder of two federal agents, were discussed, and he was continued to a 15-year reconsideration hearing in 2008. He received statutory interim hearings in 1996, 1998, 2000, and 2002, with no change[4]. He waived his statutory hearing scheduled for 2004. Mr. Peltier's offenses are also rated Category Eight, a range with no upper limit.

**PENDING MOTIONS**

There are several motions pending in this action. In footnote 3 of the Petition (Doc. 1, pg. 7) petitioners purport to incorporate all statements and materials submitted in Civil Case No. 00-CV-1479 (EGS), transferred to the District of Kansas and docketed

---

[4]    Peltier has challenged the Parole Commission's decisions in his case, and the issues he raised were thoroughly considered and denied by this court in Peltier v. Booker, Case No. 99-3194-RDR (D.Kan. September 26, 2002, unpublished), aff'd, 348 F.3d 888 (10th Cir. 2003), cert. denied, 541 U.S. 1003 (2004). That decision was affirmed on appeal by the Tenth Circuit Court of Appeals, which also thoroughly discussed Mr. Peltier's claims. Id.

as Civil Case No. 01-3168-RDR, and specifically ask the court to act upon a "Motion for Judicial Notice" filed in the prior, closed case. This court has reviewed that motion and finds it is a statement of arguments, conclusions, and cited authorities made by the petitioners in that case; rather than facts, "not subject to reasonable dispute", "generally known" or whose "accuracy cannot reasonably be questioned" such as are subject to judicial notice. Fed.R.Evid. 201(b).  The court also finds this motion has not been filed in this case with a proper caption and case number and in accordance with local rules requiring its filing with the clerk, service on respondents, and a stated basis.  For these reasons, this motion is not considered as filed in this case.  However, if it were construed as filed herein it would be denied.

Petitioners' Motion to Summarily Proceed . . . and Establish Bail (Doc. 24), and Motion to Expedite Hearing (Doc. 33) are denied as without factual or legal basis and moot[5].  Petitioners' prior similar motions for Bail (Doc. 4) and to Expedite (Doc. 5) were determined by the transferor court on November 15, 2004; and Motion to Summarily Proceed and Reconsider Bail filed November 15, 2004, (Doc. 11) was denied by this court's order entered February 8, 2005 (Doc. 23).  Petitioners' renewal of that motion provides no

---

[5]     Petitioners' Motion for Leave to file Brief (Doc. 25) is granted, and the attached Brief has been considered.  The brief attached to this Motion was in support of petitioners' motion for expedited ruling and bail (Doc. 24), which is denied.  However, the court considered the attached Brief, which is a summary of petitioners' claims and arguments presented in the Petition and attachments.

additional reasons or authority to grant the requested relief.

Respondents' Motion for Extension of Time to File Answer (Doc. 26), and Petitioner's Motion to Supplement Opposition to the Government's Request for Extension of Time (Doc. 30) are denied as moot. Petitioners' Motion to Expedite Hearing (Doc. 33) is denied. Petitioners have caused some of the unfortunate delay in this action by filing pro se pleadings even though they are represented by counsel, by filing repetitive pleadings, by submitting excessive materials, and by continually arguing default or entitlement to expedited treatment when it was they who initially filed this action in the wrong judicial district, opposed transfer, and failed to properly name or serve the correct respondents.  In any event, petitioners' claims raise questions of law and they have no right to an evidentiary hearing.  This motion is also rendered moot by this Order.

Petitioners' Motion to Transfer Case to the Southern District of Indiana (Doc. 35) has been considered and is denied.  This court had jurisdiction of this matter at the time it was filed and transferred here because petitioners were confined at the USPL. The court has not lost jurisdiction by reason of petitioners' transfer to a different judicial district after it was filed.  Moreover, the initial filing of this action in the wrong district, and the pending motion to transfer suggest an attempt to forum shop, which should not be allowed.  This court has reviewed all the materials filed by petitioners, is prepared to rule upon their claims, is not impeded in so ruling by their transfer, and retains jurisdiction to issue an

order in this cause.  Furthermore, the court notes from case law in the Eighth Circuit, that federal district courts in Indiana are not likely to rule differently upon the legal issues raised herein.  It would be a waste of judicial resources to transfer this case, which has no legal merit, to another judicial district at this late juncture.

### GENERAL LEGAL STANDARDS

In order to be entitled to federal habeas corpus relief, petitioners must show that they are in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. 2241(c)(3).  "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).

### DISCUSSION

Petitioners, as well as respondents, emphasize that the claims presented herein were previously before this court in Bledsoe v. United States, Case No. 01-3168-RDR (D.Kan. July 2, 2003), aff'd, 384 F.3d 1232 (10th Cir. 2004), cert. denied, 544 U.S. 962 (2005).  Petitioner Von Kahl filed a motion to join in the Bledsoe case, and petitioner Peltier states he intended to file such a motion, but did

not after several pending motions for joinder were denied[6]. They assert in their Petition that the entire file in the Bledsoe case should be incorporated herein[7], and the court is urged to "re-assume jurisdiction over this cause." Petitioners declare on page 13 of their Petition, "there are no new claims" in this case from those in Bledsoe, and they have been "fully litigated."

This court has reviewed the docket, significant parts of the district court case file and the pleadings submitted by petitioner's from Bledsoe; together with all other materials filed in this case; and the relevant case law and legislative history. The court finds respondents and petitioners accurately allege that the substance of their claims was thoroughly considered and decided in Bledsoe. The court also finds that no facts alleged in either petitioner's case entitles him to a different ruling or result. The crucial fact in both petitioners' cases is that they committed their offenses prior to passage of the Sentencing Reform Act. Contrary to petitioners' arguments, Congress' intent has always been clear that inmates who committed their crimes prior to passage of the SRA remain subject to

---

[6]     The order denying the motions to join (Doc. 44 entered in Case No. 01-3168 on July 27, 2001) indicates they were denied because they were not properly filed by a party or an attorney, and no motion for class certification was properly filed. Mandamus actions filed by petitioners in Bledsoe in the Tenth Circuit Court of Appeals were denied as "an attempt to circumvent appeal." It appears that denial of these motions was not properly presented on appeal.

[7]     Several paragraphs of the Petition are devoted to discussing the procedural history of Bledsoe as if it were a part of the instant case, and arguing against orders entered in Bledsoe. Moreover, petitioners allege they submit the "entire case file to date" in Bledsoe, except for the motions to join. The Petition is at times difficult to follow because petitioners cite to "Respondent's Show Cause Response", not in this case but from Bledsoe. However, they do not specify that it is the response from the prior case.

the parole statutes in effect at the time of their offenses.

Petitioners imply they could have proffered more convincing legal arguments to support their claims than presented by others in Bledsoe. However, the court finds no significant legal argument made by petitioners in this case that was not also presented and rejected in Bledsoe. Petitioners' claims, acknowledged by them to be the same as in Bledsoe and incorporated herein from that case, were fully adjudicated and rejected in a prior case in this district and the Tenth Circuit Court of Appeals.

Petitioners' claims have also been rejected by numerous and all other federal appellate courts[8] which have considered the same claims raised by federal inmates across the country who committed offenses prior to passage of the SRA. Furthermore, Congress has had ample time to pass legislation to remedy any incorrect interpretation of Sec. 235(b)(3) by the USPC, and in fact has amended it, but not in accord with petitioners' interpretation. Given the time-tested and well-established weight of authority against petitioner's claims and, in particular, the determination of the Tenth Circuit Court of Appeals that those claims are without

---

[8]

    Petitioners rely heavily upon Lyons v. Mendez, 303 F.3d 285 (3rd Cir. 2002). Other Circuits have referred to this opinion as the lone exception, and explicitly declined to follow Lyons. However, the Third Circuit has also rejected claims more similar to petitioners than those in Lyons. See e.g., United States v. Sussman, 900 F.2d 22, 24 (3rd Cir. 1990). The decision in Lyons involved a controlling fact which does not exist in this case. The petitioner in Lyons committed his offense in 1986, after passage of the SRA in 1984, but before the 1987 amendment to Sec. 235(b)(3). The Lyons court distinguished its own holding on this basis in its opinion. See id., at 289, 289 FNs 6, 7. The Tenth Circuit in Bledsoe also distinguished Lyons on this basis. Bledsoe, 384 F.3d at 1238 FN6. Lyons does not provide legal authority for petitioner's claims because it is factually distinguishable, and, even if it were not, it is not controlling in this district.

merit, this court holds at the outset that no claim for federal habeas corpus relief is stated.  The court concludes this action must be dismissed and all relief denied on the basis of <u>Bledsoe</u>. The court proceeds only to remark upon some of petitioner's arguments and assertions.

Petitioners argued in their original Petition that the five-year period "after the effective date of this Act" referred to in the original Sec. 235(b)(3) began running on November 1, 1987. However, they assert in an amendment to their Petition that the original Sec. 235(b)(3) became effective on October 12, 1984, and that the transitional "five-year period" began running on that date. As a result, they claim abolition of the USPC and repeal of the parole laws were finalized on October 12, 1989.  Petitioners cite five federal appellate court opinions as support for their interpretation.  These cases fail to convince this court that petitioners' interpretation is correct, or even if it were, that they would be entitled to relief.  <u>Dallis v. Martin</u>, 929 F.2d 587 (10th Cir. 1991) cited by petitioners is distinguishable because the Tenth Circuit in that case determined the effective date of an amendment to a criminal penalty statute, 26 U.S.C. 5871, rather than Sec. 235(b)(3).  Any dicta contained therein is particularly not convincing given the more recent <u>Bledsoe</u> opinion, which specifically dealt with Sec. 235(b)(3).  <u>Lyons v. Mendez</u>, relied upon by petitioners is distinguishable as well because, as discussed herein, the petitioner in that case did not commit his offense prior to October 12, 1984.  Morever, the court in <u>Lyons</u> ruled that Sec.

235(b)(3) took effect on October 12, 1984, but  opined that "even

after" Sec. 235(b)(3) took effect, Section 4206(c) still applied to

inmates who committed their crimes before October 12, 1984. Lyons,

303 F.3d at 292.  Petitioners also rely upon Romano v. Luther, 816

F.2d 832, 837-39 (2nd Cir. 1987)[9].  The court in Romano noted

Congress' recognition that a transition period was needed during

which the USPC should "discharge its final responsibilities" toward

those sentenced under the parole system.  Id. at 837.  They found

Sec. 235(b)(1) thus "continued in effect for a five-year transition

period various provisions of existing law" including statutes

relating to parole; and that Sec. 235(b)(3) required the USPC to set

parole release dates for certain "old law" inmates prior to its

abolition at the end of the five-year period.  They also found the

starting date of the five-year transition period was expressly

"keyed" to "the effective date of this Act," but there was ambiguity

as to whether "this Act" meant the CCCA as a whole or the SRA.  Id.

at 837.  They observed the "text of subsection 235(b) provides no

---

[9]     The following summarized discussion of this issue in Romano is instructive.  The Comprehensive Crime Control Act (CCCA) containing 23 chapters was enacted on October 12, 1984. Chapter II of the CCCA, referred to as the SRA, created the new system of determinant sentences imposed under sentencing guidelines and abolished parole as to persons sentenced thereunder. Section 235 of the SRA (which started with Section 211) is entitled "Effective Date."  It established a uniform delayed effective date for most provisions of Chapter II (the Sentencing Reform Act), provided for certain exceptions to the uniform effective date, and contained special provisions related to the transition from the current system of sentencing to the new system." Romano, 816 F.2d at 835. Subsection (a)(1) of Sec. 235 originally provided that chapter II, meaning the SRA "shall take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment," with some exceptions. Id. Congress later extended the twenty-four month period to thirty-six months. Thus, the entire CCCA and the SRA generally were enacted on October 12, 1984; however, the effective date for most provisions within the SRA was on the first day of the first month beginning thirty six months after October 12, 1984, or November 1, 1987. Id.

guidance on the issue." They also noted the CCCA, "became effective upon enactment" except as specifically provided otherwise therein; while the SRA, had "an effective date of November 1, 1987, with specified exceptions." Id. They then rejected the lower court's holding that "this Act" in subsections 235(b)(1) and (3) referred to the CCCA and that the five-year transition period therefore ran from October 12, 1984, to October 12, 1989. Id. Instead, they agreed "with the Government that the five-year period begins on November 1, 1987." Id. Thus, the Romano opinion does not support petitioners' interpretation[10]. Norwood v. Brennan, 891 F.2d 179 (7th Cir. 1989), also relied upon by petitioners, stated "the SRA transition provisions, such as then § 235, were effective immediately." However, that court held under facts more analogous to this case, in that the inmate committed his offense before 1984, that there was no disadvantage and consequently no ex post facto violation. Piekarski v. Bogan, 912 F.2d 224 (8th Cir. 1990), cited

---

[10]     The court in Romano explained that "the structure of the (SRA), the legislative history, and the wording of the bills that were the precursors of the (SRA) provide clear indications of Congress' intent." Id. at 837. They reasoned that once the new sentencing system was implemented, the role of the USPC was eliminated as to those sentenced under the new sentencing system; but since the new system was not to start until November 1, 1987, it only made sense for the five-year transition period in Sec. 235(b) to start on that date as well. Romano, 816 F.2d at 837. They found support for their interpretation in the legislative history of the CCCA, and "nothing" there to indicate that Congress intended to start the five-year transition period running from the date of enactment of the CCCA three or more years before the new sentencing system went into effect. Id. at 838-39. They concluded Congress clearly intended that the five-year transition period be postponed to begin at the same time as the new sentencing system. Id. at 837. The Second Circuit thus appears to have reasonably concluded that Sec. 235(b)(3) of the SRA generally became effective on October 12, 1984, continuing the authority of the USPC over the "old law" inmates, but the five-year transition period for rendering parole decisions did not begin until November 1, 1987. Id. at 839. They also held the USPC was under no obligation to set release dates until near the end of the transition period. Id.

by petitioners assumed the SRA was enacted in 1984, but found
Piekarski's arguments, which are the same as petitioners, to be
"clearly without merit" and an attempt to "profit from Congress's
inadvertence." <u>Id</u>. at 225.

If it were necessary in order to decide this case, this court
would hold following <u>Bledsoe</u> that the initial five-year, now twenty-
one year, transition period in Sec. 235(b)(3) was intended by
Congress to begin on November 1, 1987. The cases cited by
petitioners do not convince this court otherwise, and the contrary
authorities are more persuasive as well as controlling. <u>See</u> e.g.,
<u>Bledsoe</u>, 384 F.3d at 1233 FN 1, *citing* <u>Lewis v. Martin</u>, 880 F.2d at
290 [*citing* <u>Lightsey v. Kastner</u>, 846 F.2d 329, 332 (5th Cir.1988),
<u>cert</u>. <u>denied</u>, 488 U.S. 1015 (1989)]. The court is persuaded from
the cases cited by petitioners and other cases that whether one
interprets the effective date of Sec. 235(b)(3) as October 12, 1984,
or November 1, 1987, is of no legal consequence to prisoners who
committed their offenses prior to October 12, 1984.

Petitioners' contention that Congress actually intended and
legislated complete abolition of parole and the Parole Commission
on the enactment date of the SRA, so that the USPC's subsequent
actions are without authority and void, is frivolous. Contrary to
this contention, it is clear the repeal of the parole provisions
never applied to petitioners. The SRA's repeal of the parole
statutes applied to persons who faced sentencing under the new
guidelines, and was not retroactive. <u>Skowronek v. Brennan</u>, 896 F.2d
264, 269 (7th Cir. 1990); <u>see also</u> <u>Tripati v. USPC</u>, 872 F.2d 328, 331

(9th Cir. 1989).  In other words, the SRA's repeal of statutory provisions governing parole, like 18 U.S.C. 4206, was never applicable to persons, including petitioners, convicted before passage of the SRA.  <u>Tripati</u>, 872 F.2d at 331; <u>Skowronek</u>, 896 F.2d at 267.  Under the amended Sec. 235(b)(3), Section 4206[11] remains in effect as to this set of inmates until the USPC is actually abolished.  <u>Tripati</u>, 872 F.2d at 331; *citing* <u>Lightsey</u>, 846 F.2d at 333.  Congress has repeatedly passed legislation extending the authority of the USPC and application of the parole statutes over "old law" inmates such as petitioners.  <u>Tripati</u>, 872 F.2d at 330.  As noted, the most recent extension by Congress delays abolition of parole until November, 2008.  Congress has thus implemented legislation evincing its clear intent for inmates to be subject to the penalties in force at the time they committed their crimes.  <u>See United States v. Burgess</u>, 858 F.2d 1512, 1514 (11th Cir. 1988) (per curiam); <u>Skowronek</u>, 896 F.2d at 268; <u>Romano</u>, 816 F.2d at 838 ("preexisting law will apply as to all substantive matters . . ." and "the parole . . . statutes will remain in effect as to any prisoner sentenced before the sentencing guidelines.").

It is not disputed that the 1987 amendment to Sec. 235(b)(3) deleted a requirement that prisoners be given release dates within guidelines, and returned discretion to the USPC to decide parole release under 18 U.S.C. 4206.  Petitioners claim the original, rather than the amended version, still applies to them.  They argue

---

[11]     Section 4206(c) provides "The Commission may grant or deny release on parole notwithstanding the guidelines . . . if it determines there is good cause for doing so."

there are "two outstanding Sec. 235(b)(3)'s:" one enacted in 1984, "compelling release dates and release within established time-periods and eliminating all discretion from the Parole Commission as to all prisoners whose offenses occurred prior to November 1, 1987;" and the other enacted December 7, 1987, giving discretion to the USPC over prisoners who committed offenses after December 7, 1987.   The court rejects the argument that the original Sec. 235(b)(3) is still in effect after having been amended as to petitioners or any inmate whose offense was committed prior to passage of the SRA in 1984[12].

The court also rejects as having no legal or logical merit, petitioners' assertion that the 1987 amendment to Sec. 235(b)(3) expressly does not apply to them because Congress declared elsewhere in the Sentencing Act of 1987, "amendments made by the Act shall apply with respect to offenses committed after the enactment of the Act."   The corollary argument presented that the amended Sec. 235(b)(3) was intended to apply only to offenses committed after December 7, 1987, is even more illogical[13].   It is not disputed that the original version of Sec. 235(b)(3) expressly applied only to

---

[12]    The only inmates as to whom the original version might arguably remain in effect are those who committed their offenses after the original version was passed, but before it was amended. Petitioners' offenses were committed prior to this window of uncertainty, and the issue need not be decided in this case.

[13]    As the Seventh Circuit reasoned in Norwood, "the parole provisions of the 1987 amendments cannot be interpreted to apply to offenses committed after December 7, 1987," because ". . . the parole transition sections of the 1987 amendments must apply to offenses committed prior to the enactment of the Act," and the "offenses committed after November 1, 1987, are subject to the Sentencing Guidelines which have replaced the parole system."   Norwood, 891 F.2d at 182.

"old law" inmates[14].   Sec. 235(b)(3) was obviously promulgated for
the very purpose of controlling this limited group of inmates not
covered by the new sentencing guidelines.   The several provisions
of the SRA amended by Congress in 1987 mainly dealt with sentencing
under the guidelines and applied only to "new law" offenders who
committed their offenses after November 1, 1987.   Congress included
an amendment to Sec. 235(b)(3) in this Act, but the exceptional
language in the original version of Sec. 235(b)(3) making it
applicable only to "old law" inmates, and its obvious purpose of
dealing with "old law" inmates were not altered.   The only changes
made by the amendment to Sec. 235(b)(3) concerned the method of
dealing with the eventual release of "old law" inmates.   Bledsoe,
384 F.3d at 1238 ("The language of the 1987 amendment merely amended
the original SRA to delete the clause requiring the Commission to
set release dates within the guideline range.").   Thus, despite
Congress' imprecision in sticking a general non-retroactivity
provision in the Sentencing Act of 1986, the specific amendment to
Sec. 235(b)(3) was not thereby rendered applicable to the opposite
set of inmates than that which it was created to cover.   Nor did
many "new law" inmates thereby illogically become covered by
repealed parole provisions on top of sentencing guidelines.   In
short, Congress may not have artfully drafted the Sentencing Act of

---

[14]     The Tenth Circuit in Bledsoe quoted from Romano, 816 F.2d at 840-41, that
"subsection 235(b)(3) is obviously designed to deal with a very specific problem--the
need to be sure a parole date is established for all those who will still be in prison the
day before the Parole Commission ceases to exist . . ."
Bledsoe, 384 F.3d at 1236.

1986, but their intent to have "old law" inmates remain subject to parole statutes and release by the USPC is clear from the original statute excepting "old law" cases, the statutes governing sentencing guidelines, and the overall plan to phase out the USPC. There is no doubt that the amended version of Sec. 235(b)(3) was intended to apply to petitioners.

Petitioners assert that even if Congress intended for the amendment to apply to them, the statutory language did not so provide. Their argument that they acquired a vested liberty interest in release due to allegedly unambiguous, mandatory language in the original Sec. 235(b)(3) is without legal merit. See Piekarski, 912 F.2d at 225; see also, Lewis, 880 F.2d at 290. Congress was not forever bound by the temporary changes in parole consideration set forth in the original Sec. 235(b)(3). The Tenth Circuit Court of Appeals' reasoning in Bledsoe is controlling:

> In Lewis we rejected a prisoner's argument that the original SRA had created a statutory right for all prisoners in custody before the Parole Commission's initial expiration date in 1992 to be resentenced under that statute's guidelines. We reasoned that: "If Lewis were correct, section 235(b)(3) [of the original SRA] would be transformed from a mere phase-out provision into a sweeping decision to grant earlier release dates to large numbers of federal prisoners currently serving time beyond their guideline-recommended release dates.

Bledsoe, 384 F.3d at 1235-36, citing Lewis, 880 F.2d at 290-91. The Tenth Circuit also quoted Romano as follows:

> The premise of Romano's argument is that Congress was so dissatisfied with the practice of the Parole Commission of setting release dates for some prisoners beyond their applicable guideline ranges that it enacted subsection 235(b)(3) to stop that practice and to require the Commission to set release dates within the applicable

> guideline range for a large group of prisoners-all those
> whose maximum sentences continue beyond the day before
> the transition period ends and the Commission is abolished.
> Though Congress expressed dissatisfaction with the
> Commission's use of its parole guideline system,(cite
> omitted), its remedy was to replace the parole system with
> the new system of determinate sentencing without parole,
> not to require a large number of prisoners sentenced under
> the current system to be released within their applicable
> parole guideline ranges.

Bledsoe, at 1236 FN3, *citing* Romano, 816 F.2d at 841.

Petitioners' assertions that application to them of the amended version of Sec. 235(b)(3) was without due process, and retrospective so as to violate the ex post facto and bill of attainder prohibitions of the U.S. Constitution have repeatedly been held to have no legal merit. In Bledsoe, the Tenth Circuit Court of Appeals rejected these precise claims. The Court noted in Bledsoe "arguments similar to petitioners' have been found to be without merit by federal appellate courts across the country.[15]" Id. at 1235. They held:

---

[15]     The Bledsoe court stated:

[W]e join many federal courts of appeal in holding that the 1987 amendment as applied to prisoners who committed crimes prior to the Sentencing Reform Act's enactment does not violate the Ex Post Facto Clause. See e.g., Fassler v. (USPC), 964 F.2d 877, 880 (9th Cir. 1991)(. . . because the SRA did not affect the prisoner's sentence, the 1987 amendment to the SRA could have no Ex Post Facto effect); United States v. McCall, 915 F.2d 811, 816 (2d Cir. 1990)(. . . the SRA had no Ex Post Facto effect on a prisoner who . . . committed his crimes before the effective date of the Act); United States v. Sussman, 900 F.2d 22, 24 (3rd Cir. 1990)(" . . . defendant was never entitled to be sentenced under the sentencing guidelines[; t]herefore, defendant's Ex Post Facto rights were not violated."); Tripati v. (USPC), 872 F.2d 328, 330 (9th Cir. 1989) . . .; United States v. Haines, 855 F.2d 199, 201 (5th Cir. 1988)("[T]he later 1987 amendment made no change in the law.  It merely confirmed the intent of the 1984 statute as Congress had enacted it [not to apply retroactively in violation of the Ex Post Facto clause]."); United States v. Stewart, 865 F.2d 115, 117-18 (7th Cir. 1988) . . .; Lightsey, 846 F.2d at 333 ("{We} face and reject the notion of Ex Post Facto unconstitutionality [in application of the 1987 amendment].") . . .
Bledsoe, 384 F.3d at 1238-39; see also Piekarski, 912 F.2d at 225, and cases cited therein.

> Today we join those circuits in holding that Congress's
> 1987 amendment to the SRA did not deny prisoners such as
> petitioners, who committed crimes before the effective
> date of the SRA, due process; the amendment was not a bill
> of attainder; nor did enactment of the amendment violate
> the Ex Post Facto clause.

Id. Petitioners committed their offenses in 1977 and 1983 when the laws governing parole release decisions included 18 U.S.C. 4206. Any disadvantage which accrued to them as a result of the December, 1987 amendment, is measured against the law in effect on the dates of their offenses. Weaver v. Graham, 450 U.S. 24, 30-31 (1981). Under Sec. 235(b)(3), as amended, the laws governing parole decisions include 18 U.S.C. 4206. Each petitioner was thus put back in the same position by the amendment he would have been in had none of the intervening statutes been enacted, so he has no legitimate constitutional complaint. See Bledsoe, 384 F.3d at 1239; Skowronek, 896 F.2d at 271 FN 12; Norwood 891 F.2d at 182. "Critical to relief under the Ex Post Facto clause is not an individual's right to less punishment," but the "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver, 450 U.S. at 30. At the time petitioners committed their offenses, they had notice they would be considered for parole under the general parole statutes including 18 U.S.C. 4206. The 1987 amendment in no way increased their punishments "beyond what was prescribed when the crime was consummated." See Norwood, 891 F.2d at 182 (Petitioners continue to serve their sentences under the same conditions as when they committed their crimes, and the 1987 amendment merely clarified they

were not entitled to the windfall of shorter sentences under the guidelines.); <u>Bledsoe</u>, 384 F.3d 1238-40, *citing* <u>Leisure v. Hastings</u>, 95 Fed.Appx. 181 (7th Cir. Mar. 24, 2004, unpublished).

A final, simple answer to all petitioners' claims is that respondents have alleged each has an offense severity rating of Category 8, which puts him in a guideline range with no specified upper limit. <u>See</u> 28 C.F.R. 2.20. It follows that denial of parole in each case was "within the range that applies to the prisoner under the applicable parole guideline."

For all the foregoing reasons, the court concludes no claim for federal habeas corpus relief is stated.

**IT IS THEREFORE ORDERED** that petitioners' Motion to Summarily Proceed . . . and Establish Bail (Doc. 24), Motion to Expedite Hearing (Doc. 33), and Motion to Transfer Case (Doc. 35) are denied; petitioners' Motion for Leave to File Brief (Doc. 25) is granted, and the attached Brief in Support is filed and has been considered; and respondents' Motion for Extension of Time to File Answer (Doc. 26), and petitioners' Motion to Supplement Opposition (Doc. 30) are denied as moot.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied.

**DATED:  This 28th day of August, 2006, at Topeka, Kansas.**


**s/RICHARD D. ROGERS**
**United States District Judge**